IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

|  |  |
|---|---|
| SITO MOBILE R&D IP, LLC, and SITO MOBILE, LTD., <br><br> Plaintiffs, <br><br> v. <br><br> SAKS FIFTH AVENUE CORPORATION, <br><br> Defendant. | Case No. 1:23-cv-00666 <br><br> Jury Trial Demanded |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiffs SITO Mobile R&D IP, LLC and SITO Mobile, Ltd., by and through their undersigned counsel, file this Complaint against Saks Fifth Avenue Corporation ("Saks") for patent infringement of United States Patent Nos. 7,191,244; 8,015,307; 8,554,940; 9,349,138; 10,735,781; and 10,769,675 (collectively, the "patents-in-suit" and attached as Exhibits 1-6 respectively) and allege as follows:

## NATURE OF THE ACTION

1. This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 1 *et seq.*

## THE PARTIES

2.      Plaintiff SITO Mobile, Ltd. is a company organized and existing under the laws of the State of Delaware with its principal place of business located at 123 Town Square Place, Suite 419, Jersey City, New Jersey 07310.

3.      Plaintiff SITO Mobile R&D IP, LLC is a limited liability company organized and existing under the laws of the State of Delaware with its principal place of business located at 123 Town Square Place, Suite 419, Jersey City, New Jersey 07310. Plaintiff SITO Mobile R&D IP, LLC is a wholly owned subsidiary of Plaintiff SITO Mobile, Ltd. (collectively "SITO"). SITO Mobile R&D IP, LLC is a patent holding company that does not exist separate from its parent SITO Mobile, Ltd. In that regard, SITO Mobile, Ltd. controls all of SITO Mobile R&D IP, LLC's business operations and SITO Mobile R&D IP, LLC's financials roll-up into SITO Mobile, Ltd.

4.      On information and belief, Defendant Saks is registered to do business in Texas and has multiple locations in Texas and this judicial district, including 9503 Research Boulevard, Austin, TX 78759 and 7400 San Pedro Ave., San Antonio, TX 78216.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the patent laws of the United States, 35 U.S.C. §§ 1 *et seq.*

6.      This Court has personal jurisdiction over Saks in accordance with due process and/or the Texas Long Arm Statue because, because it has committed and continues to commit acts of infringement giving rise to this action in the State of Texas

in violation of at least 35 U.S.C. §§ 271(a). In particular, on information and belief, Saks has made, used, offered to sell and/or sold infringing products, services and/or systems in the State of Texas.

7.      This Court has personal jurisdiction over Saks for at least the following reasons: (1) Saks is present in within or has minimum contacts within the State of Texas and the Western District of Texas; (2) Saks has purposefully availed itself of the privileges of conducting business in the State of Texas and in this district; (3) Saks has sought privileges, protections, and benefits from the laws of the State of Texas; and (4) Saks regularly conducts business within the State of Texas and within this district, and Plaintiff's cause of action arises directly from Defendant's business contacts and other activities in the State of Texas and in this district, including deriving substantial revenue from the infringing goods and services in the State of Texas and this judicial district.

8.      On information and belief, Saks owns and operates department stores in this judicial district, at least at 9503 Research Boulevard, Austin TX 78759 and 7400 San Pedro Ave., San Antonio, TX 78216.

9.      On information and belief, Saks solicits Texas-based customers through its infringing video streaming services, including through its performance of demonstrations of infringing products and services in the State of Texas and in this Judicial District including by accessing www.saksfifthavenue.com.

10.      On information and belief, Saks (or those acting on its behalf) makes, uses, sells, imports and/or offers to sell the infringing video streaming services, including through the www.saksfifthavenue.com website in the United States, and this judicial

district that infringe (literally and/or under the doctrine of equivalents) one or more claims of each of the patents-in-suit.

11.     This Court has personal jurisdiction over Saks because Saks has sufficient minimum contacts with this forum as a result of business conducted within the State of Texas and this judicial district. In particular, this Court has personal jurisdiction over Saks because, inter alia, Saks, on information and belief (directly and/or through its subsidiaries, affiliates, or intermediaries), has substantial, continuous, and systematic business contacts in this judicial district, and derives substantial revenue from infringing goods and services provided to individuals in the State of Texas and this Judicial District.

12.     Saks (directly and/or through its subsidiaries, affiliates, or intermediaries) has purposefully availed itself of the privileges of conducting business within the State of Texas and in this Judicial District, has established sufficient minimum contacts with this Judicial District such that it should reasonably and fairly anticipate being hauled into court in this Judicial District, has purposefully directed activities at residents of this judicial district, and at least a portion of the patent infringement claims alleged in this Complaint arise out of or are related to one or more of the foregoing activities.

13.     On information and belief, Saks is subject to the Court's jurisdiction because it regularly markets, conducts, and solicits business, or otherwise engages in other persistent courses of conduct in the State of Texas, and/or derives substantial revenue from the sale and distribution of goods and services provided to individuals and businesses in the State of Texas including with respect to the

4

accused Saks Video Streaming Service.

14.    On information and belief, the accused Saks Video Streaming Service, that Saks uses, makes, markets, distributes, offers to sell, and sells to consumers throughout the United States, including in the State of Texas, infringe one or more claims of the patents-in-suit.

15.    Venue is proper pursuant to 28 U.S.C. §§ 1391(b), (c), (d), 1400(b) and the Federal Circuit's decision in *In re Monolithic Power Sys.*, 50 F.4th 157 (Fed. Cir. 2022), because in addition to Saks' physical locations in this judicial district, upon information and belief, Saks has numerous known employees based out of this division of this judicial district as listed on LinkedIn,[1] and, upon and information and belief, uses these employees' homes to transact its business including performing secretarial services, and storing literature, documents, and products. Saks has also directly and/or indirectly committed acts of patent infringement in this district.

---

[1] *See e.g.*,
https://www.linkedin.com/search/results/people/?currentCompany=%5B%22157315%22%2C%223961319%22%2C%2293075952%22%2C%2289989306%22%5D&geoUrn=%5B%2290000064%22%5D&heroEntityKey=urn%3Ali%3Aorganization%3A157315&keywords=saks%20fifth%20avenue&origin=FACETED_SEARCH&position=1&searchId=f08ed9a3-724a-4c7f-9683-52e2c05f8a3a&sid=CB5.



**SAKS VIDEO STREAMING SERVICE**

16.    Saks is the premier destination for luxury fashion, driven by a mission to help customers express themselves through relevant and inspiring style.[2]

---

[2] https://www.saksfifthavenue.com/

17.    Saks users can access its services through any device including phones, tablets, and computers.[3]

18.    Saks streams videos using a network(s) of servers ("Saks Streaming Platform"). Saks uses HTTP Live Streaming (HLS) protocol to stream video content. HLS is an HTTP-based adaptive bitrate streaming technique that enables high-quality streaming of media content over the Internet from web servers. The operation of HLS is described in standards documents.[4]

19.    With HLS, a video may be broken up into thousands of small HTTP-based file segments. Each segment contains a short interval of playback time of the video. The segments are encoded at a variety of different bit rates (speeds). After a video is selected to be streamed, the media player on the subscriber device is provided with a file that informs the player, amongst other things, how to obtain the segments sequentially and how to handle ad breaks (if any). As the video is playing, the subscriber device determines the bit rate that it can handle and requests a segment(s) encoded at that bit rate. The player plays the segments in sequential order and continuously requests segments until the player has received all of the segments that make up the video.

## THE PATENTS-IN-SUIT

## United States Patent No. 7,191,244

---

[3] *Id*.

[4] The MPEG-DASH standard is available at https://www.iso.org/ics/35.040.40/x/. A copy of the HLS standard is attached hereto as Exhibit 7.

20.     On March 13, 2007, the USPTO duly and legally issued United States Patent No. 7,191,244 ("the '244 patent") entitled "System and Method for Routing Media" to inventor Charles A. Jennings et al. The '244 patent is attached as Exhibit 1.

21.     The '244 patent is presumed valid under 35 U.S.C. § 282.

22.     SITO Mobile R&D IP, LLC owns all rights, title, and interest in the '244 patent.

23.     SITO Mobile, Ltd. maintains equitable title over the '244 patent as SITO Mobile R&D IP, LLC is a wholly-owned subsidiary of SITO Mobile, Ltd. As part of this ownership, SITO Mobile, Ltd. exercises complete control over SITO Mobile R&D IP, LLC, including control over all of SITO Mobile R&D IP, LLC's business decisions and SITO Mobile R&D IP, LLC's patent enforcement, assignment, and licensing policies.

24.     Because of the structure of this corporate relationship and SITO Mobile, Ltd.'s complete control over SITO Mobile R&D IP, LLC's patent licensing and enforcement policies, SITO Mobile, Ltd. has and has had control over the '244 patent and has enjoyed exclusive rights thereunder.

## United States Patent No. 8,015,307

25.     On September 06, 2011, the USPTO duly and legally issued United States Patent No. 8,015,307 ("the '307 patent") entitled "System and Method for Streaming Media" to inventor Charles A. Jennings et al. The '307 patent is attached as Exhibit 2.

26.     The '307 patent is presumed valid under 35 U.S.C. § 282.

27.     SITO Mobile R&D IP, LLC owns all rights, title and interest in the '307 patent.

28.     SITO Mobile, Ltd. maintains equitable title over the '307 patent as SITO Mobile R&D IP, LLC is a wholly-owned subsidiary of SITO Mobile, Ltd. As part of this ownership, SITO Mobile, Ltd. exercises complete control over SITO Mobile R&D IP, LLC, including control over all of SITO Mobile R&D IP, LLC's business decisions and SITO Mobile R&D IP, LLC's patent enforcement, assignment, and licensing policies.

29.     Because of the structure of this corporate relationship and SITO Mobile, Ltd.'s complete control over SITO Mobile R&D IP, LLC's patent licensing and enforcement policies, SITO Mobile, Ltd. has and has had control over the '307 patent and has enjoyed exclusive rights thereunder.

## United States Patent No. 8,554,940

30.     On October 08, 2013, the USPTO duly and legally issued United States Patent No. 8,554,940 ("the '940 patent") entitled "System and Method for Routing Media" to inventor Charles A. Jennings et al. The '940 patent is attached as Exhibit 3.

31.     The '940 patent is presumed valid under 35 U.S.C. § 282.

32.     SITO Mobile R&D IP, LLC owns all rights, title and interest in the '940 patent.

33.     SITO Mobile, Ltd. maintains equitable title over the '940 patent as SITO Mobile R&D IP, LLC is a wholly-owned subsidiary of SITO Mobile, Ltd. As part of this ownership, SITO Mobile, Ltd. exercises complete control over SITO Mobile R&D IP,

LLC, including control over all of SITO Mobile R&D IP, LLC's business decisions and SITO Mobile R&D IP, LLC's patent enforcement, assignment, and licensing policies.

34.    Because of the structure of this corporate relationship and SITO Mobile, Ltd.'s complete control over SITO Mobile R&D IP, LLC's patent licensing and enforcement policies, SITO Mobile, Ltd. has and has had control over the '940 patent and has enjoyed exclusive rights thereunder.

### United States Patent No. 9,349,138

35.    On May 24, 2016, the USPTO duly and legally issued United States Patent No. 9,349,138 ("the '138 patent") entitled "System and Method for Streaming Media" to inventor Charles A. Jennings et al. The '138 patent is attached as Exhibit 4.

36.    The '138 patent is presumed valid under 35 U.S.C. § 282.

37.    SITO Mobile R&D IP, LLC owns all rights, title and interest in the '138 patent.

38.    SITO Mobile, Ltd. maintains equitable title over the '138 patent as SITO Mobile R&D IP, LLC is a wholly-owned subsidiary of SITO Mobile, Ltd. As part of this ownership, SITO Mobile, Ltd. exercises complete control over SITO Mobile R&D IP, LLC, including control over all of SITO Mobile R&D IP, LLC's business decisions and SITO Mobile R&D IP, LLC's patent enforcement, assignment, and licensing policies.

39.    Because of the structure of this corporate relationship and SITO Mobile, Ltd.'s complete control over SITO Mobile R&D IP, LLC's patent licensing and enforcement policies, SITO Mobile, Ltd. has and has had control over the '138 patent and has enjoyed exclusive rights thereunder.

10

**United States Patent No. 10,735,781**

40.    On August 04, 2020, the USPTO duly and legally issued United States Patent No. 10,735,781 ("the '781 patent") entitled "System and Method for Routing Media" to inventor Charles A. Jennings et al. The '781 patent is attached as Exhibit 5.

41.    The '781 patent is presumed valid under 35 U.S.C. § 282.

42.    SITO Mobile R&D IP, LLC owns all rights, title and interest in the '781 patent.

43.    SITO Mobile, Ltd. maintains equitable title over the '781 patent as SITO Mobile R&D IP, LLC is a wholly-owned subsidiary of SITO Mobile, Ltd. As part of this ownership, SITO Mobile, Ltd. exercises complete control over SITO Mobile R&D IP, LLC, including control over all of SITO Mobile R&D IP, LLC's business decisions and SITO Mobile R&D IP, LLC's patent enforcement, assignment, and licensing policies.

44.    Because of the structure of this corporate relationship and SITO Mobile, Ltd.'s complete control over SITO Mobile R&D IP, LLC's patent licensing and enforcement policies, SITO Mobile, Ltd. has and has had control over the '781 patent and has enjoyed exclusive rights thereunder.

**United States Patent No. 10,769,675**

45.    On September 8, 2020, the USPTO duly and legally issued United States Patent No. 10,769,675 ("the '675 patent") entitled "System and Method for Routing Media" to inventor Charles A. Jennings et al. The '675 patent is attached as Exhibit 6.

46.    The '675 patent is presumed valid under 35 U.S.C. § 282.

47.     SITO Mobile R&D IP, LLC owns all rights, title and interest in the '675 patent.

48.     SITO Mobile, Ltd. maintains equitable title over the '675 patent as SITO Mobile R&D IP, LLC is a wholly-owned subsidiary of SITO Mobile, Ltd. As part of this ownership, SITO Mobile, Ltd. exercises complete control over SITO Mobile R&D IP, LLC, including control over all of SITO Mobile R&D IP, LLC's business decisions and SITO Mobile R&D IP, LLC's patent enforcement, assignment, and licensing policies.

49.     Because of the structure of this corporate relationship and SITO Mobile, Ltd.'s complete control over SITO Mobile R&D IP, LLC's patent licensing and enforcement policies, SITO Mobile, Ltd. has and has had control over the '675 patent and has enjoyed exclusive rights thereunder.

## CLAIMS FOR RELIEF

### Count I – Infringement of United States Patent No. 7,191,244

50.     SITO alleges, and incorporates by reference, as if fully set forth here, the preceding paragraphs of this Complaint.

51.     Saks directly infringes (literally and/or under the doctrine of equivalents) the '244 patent by using the method covered by at least claim 2 of the '244 patent.

52.     On information and belief, and without SITO's approval, authorization and license, Saks owns, controls, operates, and uses a system for streaming media that includes the Saks Streaming Platform, as well as other Saks networks, systems, devices, components and/or services for streaming media, that practices and infringes the media streaming method recited in at least claim 2 of the '244 patent.

53.    Saks performs a method of streaming video content based on a request

(e.g., GET request) as demonstrated by the example provided below:



*See e.g.,* [https://www.saksfifthavenue.com/c/live-stream/video](https://www.saksfifthavenue.com/c/live-stream/video)





*See e.g.,* https://www.saksfifthavenue.com/c/live-stream/video

54.     Saks identifies at least one program in which at least a portion of the

media is available (e.g., STATUS 200 OK).





*See e.g.,* https://www.saksfifthavenue.com/c/live-stream/video

55.    Saks processes the request (e.g., GET request) with at least one program rule of the at least one program to generate a presentation (e.g., M3U8 file) identifying the at least the portion of the media.





*See e.g.,* [https://www.saksfifthavenue.com/c/live-stream/video](https://www.saksfifthavenue.com/c/live-stream/video)

56.     Saks generates a reservation (e.g., connection, session) associated with the presentation as demonstrated by the example provided below:





*See e.g.,* [https://www.saksfifthavenue.com/c/live-stream/video](https://www.saksfifthavenue.com/c/live-stream/video)





See e.g., https://www.saksfifthavenue.com/c/live-stream/video

57.     Saks identifies at least one resource (e.g., CDN) to stream the presentation

for reception by the viewer (e.g., client device) based on the reservation.





*See e.g.,* [https://www.saksfifthavenue.com/c/live-stream/video](https://www.saksfifthavenue.com/c/live-stream/video)





*See e.g.,* https://www.saksfifthavenue.com/c/live-stream/video

58.     On information and belief, Saks has been on notice of the '244 patent at least as early as January 26, 2023, when Saks' in-house counsel responded to SITO's counsel's January 9, 2023 letter concerning Saks' infringement of the patents-in-suit.

59.     On information and belief, at least since January 26, 2023, Saks knowingly encouraged and continues to encourage, it customers to directly infringe one or more claims of the '244 patent, including by Saks' actions that include, without limitation, instructing and encouraging its customers to use the Saks Video Streaming Services through the publishing, distribution, and propagation of targeted user emails, shopping offers, support documents, blog posts, live events, and instructions, including but not limited to the examples of such materials cited above.

60.     On information and belief, at least since acquiring its January 2023 knowledge of the '244 patent, Saks knows the acts Saks induced its customers to take constitute patent infringement and Saks' encouraging acts result in direct infringement of one or more claims of the '244 patent by its customers.

61.     On information and belief, Saks' customers directly infringe at least claim 2 of the '244 patent through their use of the Saks Streaming Video Service.

*62.*     On information and belief, Saks is in violation of 35 U.S.C. § 271(b) and has been, at least since its January 2023 knowledge of the '244 patent, indirectly infringing and continues to indirectly infringe at least claim 2 of the '244 patent by knowingly and specifically intending to induce infringement by others (including, without limitation, Saks' users) and possessing specific intent to encourage infringement by Saks' users. The Saks Video Streaming Service is specifically configured to function in accordance with the '244 patent claims.

63.     SITO has been damaged by the direct and indirect infringement of Saks, and is suffering and will continue to suffer irreparable harm and damages as a result of this infringement.

## Count II– Infringement of United States Patent No. 8,015,307

64.     SITO alleges, and incorporates by reference, as if fully set forth here, the preceding paragraphs of this Complaint.

65.     Saks directly infringes (literally and/or under the doctrine of equivalents) the '307 patent by using the method covered by at least claim 30 of the '307 patent.

66.    On information and belief, and without SITO's approval, authorization and license, Saks owns, controls, operates and uses a system for streaming media that includes the Saks Streaming Platform, as well as other Saks networks, systems, devices, components and/or services for streaming media, that practices and infringes the media streaming method recited in at least claim 30 of the '307 patent.

67.    Saks performs a method of streaming video as demonstrated by the example provided below:



*See e.g.,* *https://www.saksfifthavenue.com/c/live-stream/video*

68.    Saks processes a request (e.g., GET request) for media at a management system (e.g., contained within Saks streaming service server(s)) and builds in response thereto a reservation (e.g., session or connection) comprising a reservation identification (e.g., the reservation identification is appended with the universal resource locator) and

a presentation identification (e.g., M3U8 file), the presentation identification identifying a presentation (e.g., M3U8 file) comprising at least one network distribution rule (e.g., bandwidth) and a media play list (e.g., segment list for the media) comprising a plurality of media names.





*See e.g.,* [https://www.saksfifthavenue.com/c/live-stream/video](https://www.saksfifthavenue.com/c/live-stream/video)





*See e.g.,* [https://www.saksfifthavenue.com/c/live-stream/video](https://www.saksfifthavenue.com/c/live-stream/video)

69.     Saks reserves a resource (e.g., Media server) to stream media for the

reservation (e.g., connection, session) at the management system (e.g., contained within

Saks streaming service server).





*See e.g.,* [https://www.saksfifthavenue.com/c/live-stream/video](https://www.saksfifthavenue.com/c/live-stream/video)

70.    Saks transmits the presentation (e.g., M3U8 file) and reservation data comprising a valid reservation identification (e.g., the reservation identification is appended with the universal resource locator) from the management system (e.g., Saks streaming service server(s)) to a routing processor (e.g., Saks streaming server(s)) and transmits the reservation formatted for reception by the viewer.





*See e.g.,* https://www.saksfifthavenue.com/c/live-stream/video

71.    Saks selects a media switch (e.g., CDN) at the routing processor based on the at least one network distribution rule, the at least one network distribution rule comprising at least one member of a group comprising a capacity rule, a load rule, a bandwidth rule, a resource rule, and a session rule.





*See e.g.,* https://www.saksfifthavenue.com/c/live-stream/video

72.    Saks determines, at the routing processor, if the media switch (e.g., CDN) is configured to stream the media identified by the media playlist (e.g., segment list contained within the M3U8 file).





*See e.g.,* <https://www.saksfifthavenue.com/c/live-stream/video>





*See e.g.,* [https://www.saksfifthavenue.com/c/live-stream/video](https://www.saksfifthavenue.com/c/live-stream/video)

73.    Saks transmits the reservation data from the routing processor to the media switch (e.g., CDN) if the media switch is configured, at least initially, to stream the media for the media play list.





*See e.g.,* https://www.saksfifthavenue.com/c/live-stream/video

74. Saks validates the reservation identification with the reservation data at the media switch and for each media name on the media play list, streaming at least partially the media identified by the media name if the reservation identification is valid.





*See e.g.,* https://www.saksfifthavenue.com/c/live-stream/video





*See e.g.,* https://www.saksfifthavenue.com/c/live-stream/video

75.     On information and belief, Saks has been on notice of the '307 patent at least as early as January 26, 2023, when Saks' in-house counsel responded to SITO's counsel's January 9, 2023 letter concerning Saks' infringement of the patents-in-suit.

76.     On information and belief, at least since January 26, 2023, Saks knowingly encouraged and continues to encourage, it customers to directly infringe one or more claims of the '307 patent, including by Saks' actions that include, without limitation, instructing and encouraging its customers to use the Saks Video Streaming Services through the publishing, distribution, and propagation of targeted user emails, shopping offers, support documents, blog posts, live events, and instructions, including but not limited to the examples of such materials cited above.

77.    On information and belief, at least since acquiring its January 2023 knowledge of the '307 patent, Saks knows the acts Saks induced its customers to take constitute patent infringement and Saks' encouraging acts result in direct infringement of one or more claims of the '307 patent by its customers.

78.    On information and belief, Saks' customers directly infringe at least claim 30 of the '307 patent through their use of the Saks Video Streaming Service.

79.    On information and belief, Saks is in violation of 35 U.S.C. § 271(b) and has been, at least since its January 2023 knowledge of the '307 patent, indirectly infringing and continues to indirectly infringe at least claim 30 of the '307 patent by knowingly and specifically intending to induce infringement by others (including, without limitation, Saks' users) and possessing specific intent to encourage infringement by Saks' users. The Saks Video Streaming Service is specifically configured to function in accordance with the '307 patent claims.

80.    SITO has been damaged by the direct and indirect infringement of Saks, and is suffering and will continue to suffer irreparable harm and damages as a result of this infringement.

### Count III– Infringement of United States Patent No. 8,554,940

81.    SITO alleges, and incorporates by reference, as if fully set forth here, the preceding paragraphs of this Complaint.

82.    Saks directly infringes (literally and/or under the doctrine of equivalents) the '940 patent by using the method covered by at least claim 1 of the '940 patent.

83.    On information and belief, and without SITO's approval, authorization
and license, Saks owns, controls, operates and uses a system for streaming media that
includes the Saks Streaming Platform, as well as other Saks networks, systems, devices,
components and/or services for streaming media, that practices and infringes the
media streaming method recited in at least claim 1 of the '940 patent.

84.    Saks performs a method of streaming video as demonstrated by the
example provided below:



*See e.g.,* *https://www.saksfifthavenue.com/c/live-stream/video*

85.    Saks processes a request (e.g., GET request) at a reservation system (e.g.,
Saks Streaming Service server(s)) to identify at least one program (e.g., requested media
or video) comprising at least one program routing rule (e.g., geographic restrictions)
and a list of media from which at least a portion of the media is identified.



*See e.g.,* [https://www.saksfifthavenue.com/c/live-stream/video](https://www.saksfifthavenue.com/c/live-stream/video)

86.    Saks processes the request (e.g., GET request) with the at least one

program routing rule and the list of media of the program to generate a presentation

(e.g., M3U8 file) identifying the at least the portion of the media, the presentation being in a format receivable by the viewer.





*See e.g.,* [https://www.saksfifthavenue.com/c/live-stream/video](https://www.saksfifthavenue.com/c/live-stream/video)

87.    Saks generates and transmits a reservation (e.g., session or connection)

associated with the presentation (e.g., M3U8 file) from the reservation system.





*See e.g.,* [https://www.saksfifthavenue.com/c/live-stream/video](https://www.saksfifthavenue.com/c/live-stream/video)





*See e.g.,* https://www.saksfifthavenue.com/c/live-stream/video

88.     On information and belief, Saks receives the reservation (e.g., session, connection) at a routing processor (e.g., Saks streaming server(s)) and, at the routing processor (e.g., Saks streaming server(s)) determines a priority for a plurality of media

switches (e.g., edge servers of the CDN) available to stream the at least the portion of the media (e.g., media segments contained within the M3U8 file) identified in the presentation (e.g., M3U8 file) based on the at least one program routing rule.

89.     On information and belief, Saks receives the reservation (e.g., session, connection) at a routing processor (e.g., Saks streaming server(s)) and, at the routing processor (e.g., Saks streaming server(s)) selects at least one of the plurality of media switches (e.g., edge servers of the CDN) to stream the at least the portion of the media (e.g., media segments contained within the M3U8 file) identified in the presentation (e.g., M3U8 file) based on the priority.

90.     On information and belief, Saks receives the reservation (e.g., session, connection) at a routing processor (e.g., Saks streaming server(s)) and, at the routing processor (e.g., Saks streaming server(s)) generates an address (e.g., URL) of the selected at least one of the plurality of media switches (e.g., e.g., edge servers of the CDN) in a format receivable by the viewer.





*See e.g.,* [https://www.saksfifthavenue.com/c/live-stream/video](https://www.saksfifthavenue.com/c/live-stream/video)





*See e.g.,* [https://www.saksfifthavenue.com/c/live-stream/video](https://www.saksfifthavenue.com/c/live-stream/video)

91.    On information and belief, Saks has been on notice of the '940 patent at least as early as January 26, 2023, when Saks' in-house counsel responded to SITO's counsel's January 9, 2023 letter concerning Saks' infringement of the patents-in-suit.

92.    On information and belief, at least since January 26, 2023, Saks knowingly encouraged and continues to encourage, it customers to directly infringe one or more claims of the '940 patent, including by Saks' actions that include, without limitation, instructing and encouraging its customers to use the Saks Video Streaming Services through the publishing, distribution, and propagation of targeted user emails, shopping offers, support documents, blog posts, live events, and instructions, including but not limited to the examples of such materials cited above.

93.     On information and belief, at least since acquiring its January 2023 knowledge of the '940 patent, Saks knows the acts Saks induced its customers to take constitute patent infringement and Saks' encouraging acts result in direct infringement of one or more claims of the '940 patent by its customers.

94.     On information and belief, Saks' customers directly infringe at least claim 1 of the '940 patent through their use of the Saks Video Streaming Service.

95.     On information and belief, Saks is in violation of 35 U.S.C. § 271(b) and has been, at least since its January 2023 knowledge of the '940 patent, indirectly infringing and continues to indirectly infringe at least claim 1 of the '940 patent by knowingly and specifically intending to induce infringement by others (including, without limitation, Saks' users) and possessing specific intent to encourage infringement by Saks' users. The Saks Video Streaming Service is specifically configured to function in accordance with the '940 patent claims.

96.     SITO has been damaged by the direct and indirect infringement of Saks, and is suffering and will continue to suffer irreparable harm and damages as a result of this infringement.

### Count IV – Infringement of United States Patent No. 9,349,138

97.     SITO alleges, and incorporates by reference, as if fully set forth here, the preceding paragraphs of this Complaint.

98.     Saks directly infringes (literally and/or under the doctrine of equivalents) claim 11 of the '138 patent.

99.     On information and belief, and without SITO's approval, authorization and license, Saks owns, controls, operates and uses a system for streaming media that includes the Saks Streaming Platform, as well as other Saks networks, systems, devices, components and/or services for streaming media, that practices and infringes claim 11 of the '138 patent.

100.    Saks performs a method for managing streaming of video content to a client device (*e.g.*, personal computer, mobile device, and/or television) as demonstrated by the example provided below:



*See e.g.,* *https://www.saksfifthavenue.com/c/live-stream/video*

101.    On information and belief, Saks causes a media switch (e.g., Content delivery network, CDN) to generate a media switch state model, the media switch state model comprises at least one state change for at least one state (e.g., streaming paused,

resumed, or skipped to the next segment) occurring for a session of streaming the media to at least one of a plurality of viewers (e.g., client devices), the at least one state change comprising at least one member selected from a group consisting of a session initiation state, a viewing event state, and a session termination state, each comprising a reservation identification (e.g., the reservation identification is appended with the universal resource locator) for the reservation.

102.    On information and belief, Saks generates a routing processor state model of a routing processor (e.g., contained within the Saks streaming server), the routing processor state model comprising an identification of the media switch (e.g., CDN) selected to stream the media and the reservation identification (e.g., the reservation identification is appended with the universal resource locator) to the at least one of a plurality of viewers, wherein the media switch is selected based on at least one network distribution rule (e.g., bandwidth supported by the client device).





*See e.g.,* [https://www.saksfifthavenue.com/c/live-stream/video](https://www.saksfifthavenue.com/c/live-stream/video)

103.    On information and belief, Saks receives, by at least one processor, a routing processor identification (e.g., contained within the Saks streaming server) and a reservation identification for the reservation (e.g., the reservation identification is appended with the universal resource locator), the routing processor identification identifying a routing processor to select a media switch to stream the media to at least one of a plurality of viewers, the routing processor selecting the media switch based on the at least one network distribution rule.





*See e.g.,* [https://www.saksfifthavenue.com/c/live-stream/video](https://www.saksfifthavenue.com/c/live-stream/video)





*See e.g.,* [https://www.saksfifthavenue.com/c/live-stream/video](https://www.saksfifthavenue.com/c/live-stream/video)

104.    On information and belief, Saks receives, by the at least one processor, a media switch identification and the reservation identification for the reservation, the media switch identification identifying the media switch selected to stream the media.

105.    On information and belief, Saks receives, by the at least one processor, a state change identification and the reservation identification for the reservation, the state change identification identifying the at least one state change for the at least one state occurring for the session of streaming the media to the at least one of a plurality of viewers, wherein the session initiation state and the session termination state each comprise a reservation identification for the reservation.

106.    On information and belief, Saks has been on notice of the '138 patent at least as early as January 26, 2023, when Saks' in-house counsel responded to SITO's counsel's January 9, 2023 letter concerning Saks' infringement of the

patents-in-suit.

107.    On information and belief, at least since January 26, 2023, Saks knowingly encouraged and continues to encourage, it customers to directly infringe one or more claims of the '138 patent, including by Saks' actions that include, without limitation, instructing and encouraging its customers to use the Saks Video Streaming Services through the publishing, distribution, and propagation of targeted user emails, shopping offers, support documents, blog posts, live events, and instructions, including but not limited to the examples of such materials cited above.

108.    On information and belief, at least since acquiring its January 2023 knowledge of the '138 patent, Saks knows the acts Saks induced its customers to take constitute patent infringement and Saks' encouraging acts result in direct infringement of one or more claims of the '138 patent by its customers.

109.    On information and belief, Saks' customers directly infringe at least claim 11 of the '138 patent through their use of the Saks Video Streaming Service.

110.    On information and belief, Saks is in violation of 35 U.S.C. § 271(b) and has been, at least since its January 2023 knowledge of the '138 patent, indirectly infringing and continues to indirectly infringe at least claim 11 of the '138 patent by knowingly and specifically intending to induce infringement by others (including, without limitation, Saks' users) and possessing specific intent to encourage infringement by Saks' users. The Saks Video Streaming Service is specifically configured to function in accordance with the '138 patent claims.

111.    SITO has been damaged by the direct and indirect infringement of Saks, and is suffering and will continue to suffer irreparable harm and damages as a result of this infringement.

### Count V – Infringement of United States Patent No. 10,735,781

112.    SITO alleges, and incorporates by reference, as if fully set forth here, the preceding paragraphs of this Complaint.

113.    Saks directly infringes (literally and/or under the doctrine of equivalents) the '781 patent by using the method covered by at least claim 1 of the '781 patent.

114.    On information and belief, and without SITO's approval, authorization and license, Saks owns, controls, operates, and uses a system for streaming media that includes the Saks Streaming Platform, as well as other Saks networks, systems, devices, components, and/or services for streaming media, that practices and infringes the media streaming method recited in at least claim 1 of the '781 patent.

115.    Saks performs a method of streaming video content to a client device (*e.g.*, a client device such as a personal computer, mobile device, and/or television) as demonstrated by the example provided below:



Watch our iconic window unveiling and light show, in partnership with the Elton John AIDS Foundation, starring special guest Elton John.

Presented by Mastercard.

*See e.g.,* *https://www.saksfifthavenue.com/c/live-stream/video*

116.    On information and belief, Saks provides the video content to a content distribution network for storage in a plurality of geographically separated resources of the content distribution network.

117.    Saks selects one or more advertisement media clips based on statistical information associated with a user of the client device.

**From Automatic Site or App Data Collection Technologies:** We, or third parties working on our behalf, may use cookies, web beacons, javascript and pixel tags, log files, or other technologies to collect certain non-personally identifying information about visitors to our Site or App, users of our online Services, and interactions with our emails and online advertisements, and to allow Saks to keep track of analytics and certain statistical information. For example, we may collect information such as your browser type, operating system type or mobile device model, viewed webpages, links that are clicked, IP address, mobile device identifier or other unique identifier, sites or apps visited before coming to our Site or App, the amount of time you spend viewing or using the Site or App, the number of times you return, or other click-stream or site usage data, emails we send that you open, forward, or click through to our Site or App. Collecting this information, and linking it with your personal information, helps us to tailor our Site and App and enhance your online shopping experience by saving your preferences while you are visiting a particular Site or App, and to help identify Site or App features, promotions, advertisements, and offers that may be of particular interest to you and retarget online and mobile advertisements to you across computers or devices you may use.

**From Third-Party Sources:** We may acquire information from other sources to update or supplement the information that you provide or that we collect automatically (such as information to validate or update your address or other demographic information), or when you connect with the company through a third party (including through social networks) based on your registration and privacy settings on those third-party sites.

**Combination of Information:** We may combine the information we receive from or about you, including information you provide to us and information we automatically collect through the Site or App, as well as information across other computers or devices that you use, with information we collect or receive about you from other online and offline services, or from other third-party sources. This may also include using technologies to recognize multiple interactions and combine them into a single customer profile where appropriate.

**From Third-Party Analytics and Advertisements:** We also may use third-party advertisements, analytics, and tracking tools to better understand who is using the Site or App, how people are using the Site or App, how to improve the effectiveness of the Services and related content, and to help us or those third parties serve more targeted advertising to you across our media channels. These third parties may use technology such as cookies, web beacons, javascript and pixel tags, log files, flash cookies, or other technologies to collect and store information. They may also combine information they collect from your interaction with the Site or App with information they collect from other sources, which combination may be subject to the third party's control and privacy policy.

See e.g., *https://www.saksfifthavenue.com/c/content/privacy-policy*

118.    Saks receives, from the client device (*e.g.*, personal computer, mobile device, television) via a packet-based telecommunication network (e.g., Internet), signaling (*e.g.*, GET request) to have the stored video content streamed to the client device as demonstrated by the example provided below:



See e.g., https://www.saksfifthavenue.com/c/live-stream/video

119.    In response to the received signaling (*e.g.*, GET request), Saks transmits

one or more files (*e.g.*, (M3U8 file)) having a format compatible with a media player to

the client device (*e.g.*, personal computer, mobile device, television) over the packet-

based telecommunication network (*e.g.,* the Internet) as demonstrated by the example

provided below:





*See e.g.,* *https://www.saksfifthavenue.com/c/live-stream/video*

120.     The M3U8 includes an identification (*e.g.*, URL that resolves an IP

address) of one or more of the resources (*e.g.*, media streaming server(s)) of the content

distribution network available to facilitate streaming of one or more segments of the

stored video content to the client device (*e.g.*, personal computer, mobile device,

television), the identification is dependent at least in part on a relationship between a

geographic location of the client device and geographic locations (*e.g.*, CDNs) of the

resources of the content distribution network as demonstrated by the examples

provided below:





*See e.g.,* [https://www.saksfifthavenue.com/c/live-stream/video](https://www.saksfifthavenue.com/c/live-stream/video)





*See e.g.,* [https://www.saksfifthavenue.com/c/live-stream/video](https://www.saksfifthavenue.com/c/live-stream/video)

121.    The M3U8 includes an identification of an advertising server, the

identification of the advertising server being dependent at least in part on a relationship

between the geographic location (*e.g.,* CDNs) of the client device (*e.g.,* personal

computer, mobile device, television) and a geographic location of the advertising server.

**From Automatic Site or App Data Collection Technologies:** We, or third parties working on our behalf, may use cookies, web beacons, javascript and pixel tags, log files, or other technologies to collect certain non-personally identifying information about visitors to our Site or App, users of our online Services, and interactions with our emails and online advertisements, and to allow Saks to keep track of analytics and certain statistical information. For example, we may collect information such as your browser type, operating system type or mobile device model, viewed webpages, links that are clicked, IP address, mobile device identifier or other unique identifier, sites or apps visited before coming to our Site or App, the amount of time you spend viewing or using the Site or App, the number of times you return, or other click-stream or site usage data, emails we send that you open, forward, or click through to our Site or App. Collecting this information, and linking it with your personal information, helps us to tailor our Site and App and enhance your online shopping experience by saving your preferences while you are visiting a particular Site or App, and to help identify Site or App features, promotions, advertisements, and offers that may be of particular interest to you and retarget online and mobile advertisements to you across computers or devices you may use.

**From Third-Party Sources:** We may acquire information from other sources to update or supplement the information that you provide or that we collect automatically (such as information to validate or update your address or other demographic information), or when you connect with the company through a third party (including through social networks) based on your registration and privacy settings on those third-party sites.

**Combination of Information:** We may combine the information we receive from or about you, including information you provide to us and information we automatically collect through the Site or App, as well as information across other computers or devices that you use, with information we collect or receive about you from other online and offline sources, or from other third-party sources. This may also include using technologies to recognize multiple interactions and combine them into a single customer profile where appropriate.

**From Third-Party Analytics and Advertisements:** We also may use third-party advertisements, analytics, and tracking tools to better understand who is using the Site or App, how people are using the Site or App, how to improve the effectiveness of the Services and related content, and to help us or those third parties serve more targeted advertising to you across our media channels. These third parties may use technology such as cookies, web beacons, javascript and pixel tags, log files, flash cookies, or other technologies to collect and store information. They may also combine information they collect from your interaction with the Site or App with information they collect from other sources, which combination may be subject to the third party's control and privacy policy.

*See e.g.,* [https://www.saksfifthavenue.com/c/content/privacy-policy](https://www.saksfifthavenue.com/c/content/privacy-policy)

122.    The M3U8 causes the client device to communicate with resources (*e.g.,* media streaming servers) of the content distribution network and the advertising server to cause the one or more segments of the stored video to be streamed to the client device (*e.g.,* personal computer, mobile device, television) by the identified one or more resources of the content distribution network and cause one or more advertisements to be streamed from the advertising server to the client device.



*See e.g.,* [https://www.saksfifthavenue.com/c/live-stream/video](https://www.saksfifthavenue.com/c/live-stream/video)

**From Automatic Site or App Data Collection Technologies:** We, or third parties working on our behalf, may use cookies, web beacons, javascript and pixel tags, log files, or other technologies to collect certain non-personally identifying information about visitors to our Site or App, users of our online Services, and interactions with our emails and online advertisements, and to allow Saks to keep track of analytics and certain statistical information. For example, we may collect information such as your browser type, operating system type or mobile device model, viewed webpages, links that are clicked, IP address, mobile device identifier or other unique identifier, sites or apps visited before coming to our Site or App, the amount of time you spend viewing or using the Site or App, the number of times you return, or other click-stream or site usage data, emails we send that you open, forward, or click through to our Site or App. Collecting this information, and linking it with your personal information, helps us to tailor our Site and App and enhance your online shopping experience by saving your preferences while you are visiting a particular Site or App, and to help identify Site or App features, promotions, advertisements, and offers that may be of particular interest to you and retarget online and mobile advertisements to you across computers or devices you may use.

**From Third-Party Sources:** We may acquire information from other sources to update or supplement the information that you provide or that we collect automatically (such as information to validate or update your address or other demographic information), or when you connect with the company through a third party (including through social networks) based on your registration and privacy settings on those third-party sites.

**Combination of Information:** We may combine the information we receive from or about you, including information you provide to us and information we automatically collect through the Site or App, as well as information across other computers or devices that you use, with information we collect or receive about you from other online and offline sources, or from other third-party sources. This may also include using technologies to recognize multiple interactions and combine them into a single customer profile where appropriate.

**From Third-Party Analytics and Advertisements:** We also may use third-party advertisements, analytics, and tracking tools to better understand who is using the Site or App, how people are using the Site or App, how to improve the effectiveness of the Services and related content, and to help us or those third parties serve more targeted advertising to you across our media channels. These third parties may use technology such as cookies, web beacons, javascript and pixel tags, log files, flash cookies, or other technologies to collect and store information. They may also combine information they collect from your interaction with the Site or App with information they collect from other sources, which combination may be subject to the third party's control and privacy policy.

*See e.g.,* [*https://www.saksfifthavenue.com/c/content/privacy-policy*](https://www.saksfifthavenue.com/c/content/privacy-policy)

123.     On information and belief, Saks has been on notice of the '781 patent at least as early as January 26, 2023, when Saks' in-house counsel responded to SITO's counsel's January 9, 2023 letter concerning Saks' infringement of the patents-in-suit.

124.     On information and belief, at least since January 26, 2023, Saks knowingly encouraged and continues to encourage, it customers to directly infringe one or more claims of the '781 patent, including by Saks' actions that include, without limitation, instructing and encouraging its customers to use the Saks Video Streaming Services through the publishing, distribution, and propagation of targeted user emails, shopping offers, support documents, blog

posts, live events, and instructions, including but not limited to the examples of such materials cited above.

125.    On information and belief, at least since acquiring its January 2023 knowledge of the '781 patent, Saks knows the acts Saks induced its customers to take constitute patent infringement and Saks' encouraging acts result in direct infringement of one or more claims of the '781 patent by its customers.

126.    On information and belief, Saks' customers directly infringe at least claim 1 of the '781 patent through their use of the Saks Video Streaming Service.

127.    On information and belief, Saks is in violation of 35 U.S.C. § 271(b) and has been, at least since its January 2023 knowledge of the '781 patent, indirectly infringing and continues to indirectly infringe at least claim 1 of the '781 patent by knowingly and specifically intending to induce infringement by others (including, without limitation, Saks' users) and possessing specific intent to encourage infringement by Saks' users. The Saks Video Streaming Service is specifically configured to function in accordance with the '781 patent claims.

128.    SITO has been damaged by the direct and indirect infringement of Saks, and is suffering and will continue to suffer irreparable harm and damages as a result of this infringement.

**Count VI – Infringement of United States Patent No. 10,769,675**

129.    SITO alleges, and incorporates by reference, as if fully set forth here, the preceding paragraphs of this Complaint.

130.    Saks directly infringes (literally and/or under the doctrine of equivalents) the '675 patent by using the method covered by at least claim 31 of the '675 patent.

131.    On information and belief, and without SITO's approval, authorization and license, Saks owns, controls, operates, and uses a system for streaming media that includes the Saks Streaming Platform, as well as other Saks networks, systems, devices, components, and/or services for streaming media, that practices and infringes the media streaming method recited in at least claim 31 of the '675 patent.

132.    Saks performs a method of streaming video as demonstrated by the example provided below:



*See e.g.,* *https://www.saksfifthavenue.com/c/live-stream/video*

133. On information and belief, Saks receives, from each of a plurality of media owners, media for a plurality of events (*e.g.,* media files/videos) for streaming and one or more media rules (e.g., geographic restrictions) governing transmission of the received media, wherein the one or more media rules are used by the streaming system to determine a streaming sequence for the transmission of the received media and determine one or more streaming resources (e.g., CDNs) to which the received media is to be distributed.

134. Saks receives, from a communication device (*e.g.,* personal computer, mobile device, television) via a communication network (*e.g.,* Internet), a request (*e.g.,* GET request) for media for one of the plurality of events to be streamed to the communication device, the media for the requested event comprising a plurality of segments and the requested event being selected by a user of the communication device from a plurality of event options (*e.g.,* media files/videos).



*See e.g.,* [https://www.saksfifthavenue.com/c/live-stream/video](https://www.saksfifthavenue.com/c/live-stream/video)





*See e.g.,* [https://www.saksfifthavenue.com/c/live-stream/video](https://www.saksfifthavenue.com/c/live-stream/video)

135.    In response to the received request (*e.g.,* GET request), Saks transmits one or more files (*e.g.,* (M3U8 file)) to the communication device (*e.g.,* personal computer, mobile device, television) over the packet-based telecommunication network (*e.g.,* the Internet) as demonstrated by the example provided below:





*See e.g.,* [https://www.saksfifthavenue.com/c/live-stream/video](https://www.saksfifthavenue.com/c/live-stream/video)

136.    The M3U8 file includes one or more references (*e.g.,* URLs/filename) to one or more of the segments of the media for the requested event (e.g., video).





*See e.g.,* https://www.saksfifthavenue.com/c/live-stream/video

137.    On information and belief, the M3U8 file includes information, the

information being based at least in part on the one or more media rules (*e.g.,* geographic

restrictions), for use by the communication device identifying how to communicate

with the one or more determined resources (*e.g.*, media streaming server/CDN) to

cause the one or more segments of the media for the requested event to be streamed to

the communication device (*e.g.*, client device) in accordance with the one or more media

rules.





*See e.g.,* [https://www.saksfifthavenue.com/c/live-stream/video](https://www.saksfifthavenue.com/c/live-stream/video)



*See e.g.,* [https://www.saksfifthavenue.com/c/live-stream/video](https://www.saksfifthavenue.com/c/live-stream/video)

138.    On information and belief, Saks has been on notice of the '675 patent

at least as early as January 26, 2023, when Saks' in-house counsel responded to

SITO's counsel's January 9, 2023 letter concerning Saks' infringement of the

patents-in-suit.

139.    On information and belief, at least since January 26, 2023, Saks knowingly encouraged and continues to encourage, it customers to directly infringe one or more claims of the '675 patent, including by Saks' actions that include, without limitation, instructing and encouraging its customers to use the Saks Video Streaming Services through the publishing, distribution, and propagation of targeted user emails, shopping offers, support documents, blog posts, live events, and instructions, including but not limited to the examples of such materials cited above.

140.    On information and belief, at least since acquiring its January 2023 knowledge of the '675 patent, Saks knows the acts Saks induced its customers to take constitute patent infringement and Saks' encouraging acts result in direct infringement of one or more claims of the '675 patent by its customers.

141.    On information and belief, Saks' customers directly infringe at least claim 31 of the '675 patent through their use of the Saks Video Streaming Service.

142.    On information and belief, Saks is in violation of 35 U.S.C. § 271(b) and has been, at least since its January 2023 knowledge of the '675 patent, indirectly infringing and continues to indirectly infringe at least claim 31 of the '675 patent by knowingly and specifically intending to induce infringement by others (including, without limitation, Saks' users) and possessing specific intent to encourage infringement by Saks' users. The Saks Video Streaming Service is specifically configured to function in accordance with the '675 patent claims.

143.    SITO has been damaged by the direct and indirect infringement of Saks, and is suffering and will continue to suffer irreparable harm and damages as a result of this infringement.

## JURY DEMANDED

144.    Pursuant to Federal Rule of Civil Procedure 38(b), SITO hereby requests a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

SITO respectfully requests this Court to enter judgment in SITO's favor and against Saks as follows:

a.    finding that Saks directly infringes, literally and/or under the doctrine of equivalents, one or more claims of each of the patents-in-suit;

b.    finding that Saks indirectly infringes, literally and/or under the doctrine of equivalents, one or more claims of each of the patents-in-suit;

c.    awarding SITO damages under 35 U.S.C. § 284, or otherwise permitted by law, including supplemental damages for any continued post-verdict infringement;

d.    awarding SITO pre-judgment and post-judgment interest on the damages award and costs;

e.    awarding costs of this action (including all disbursements) and attorney fees pursuant to 35 U.S.C. § 285, or as otherwise permitted by the law; and

f.    awarding such other costs and further relief that the Court determines to be just and equitable.

June 13, 2023                          Respectfully submitted,

                                       _/s/ Zachary H. Ellis_____
                                       Zachary H. Ellis (State Bar No. 24122606)*
                                       zellis@daignaultiyer.com
                                       Tel: 512-829-7992

                                       Ronald M. Daignault (*pro hac vice* to be filed)*
                                       Chandran B. Iyer (*pro hac vice* to be filed)
                                       Jason S. Charkow (*pro hac vice* to be filed)*
                                       DAIGNAULT IYER LLP
                                       8618 Westwood Center Drive, Suite 150
                                       Vienna, VA 22182
                                       rdaignault@daignaultiyer.com
                                       cbiyer@daignaultiyer.com
                                       jcharkow@daignaultiyer.com

                                       *Not admitted in Virginia*

                                       *Attorneys for Plaintiffs*
                                       *SITO Mobile R&D IP, LLC and*
                                       *SITO Mobile Ltd.*